No. 22152.

SHIRLEY SNIDER v. KIT CARSON SCHOOL DISTRICT R-1, IN THE COUNTY OF CHEYENNE AND STATE OF COLORADO.
(442 P.2d 429)

Decided June 24, 1968.

GORDON, LEFFERDINK & LEGG, for plaintiff in error.

JOHN W. LENTZ, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

THIS writ of error concerns a contract of employment between Shirley Snider, hereinafter referred to as the plaintiff, and Kit Carson School District R-1, hereinafter referred to as the district. Plaintiff brought an action for breach of contract against the district, praying for actual damages in the sum of $381, plus exemplary damages in the sum of $2,000.

Upon hearing, the trial court determined that there was no genuine issue as to any material fact and granted the district's motion for summary judgment. Judgment

dismissing the complaint with prejudice was thereafter entered, and by this writ of error plaintiff now seeks reversal of the judgment thus entered.

The pleadings and the several affidavits filed in connection with the district's motion for summary judgment established the following:

1. On July 23, 1963 plaintiff and the district entered into a contract of employment whereby plaintiff agreed to teach in a public school in the district for the school year beginning on August 22, 1963 at an annual wage of $4,576, payable in 12 monthly installments;

2. Plaintiff commenced her teaching duties on August 22, 1963 and continued to perform under the contract till January 24, 1964;

3. On January 24, 1964 plaintiff received a letter from the school superintendent wherein she was advised by the superintendent that "the School Board has asked me to notify you that Friday, January 24, 1964 is to be your last day as an employee of the district";

4. Plaintiff then requested a hearing before the school board, which request was granted, and thereafter plaintiff received due notice of the charges against her and the time and place where the requested hearing was to be held;

5. On February 26,1964 the school board held a hearing concerning the continued employment of plaintiff by the district, though the plaintiff elected not to appear at said hearing;

6. Evidence was taken at said hearing and as a result thereof the school board on February 29, 1964, after making detailed findings of fact, dismissed plaintiff from the employ of the district; and

7. Plaintiff was then paid her salary through February 29, 1964, including the "pro rata" monies due her for the summer months.

It was in this factual setting, then, that plaintiff sued the district for breach of contract, alleging that the district breached the contract on January 24, 1964 when

its superintendent served written notice upon her that the employment was terminated as of that date. The district in its answer denied that it was the board of education of the district, as distinguished from the school superintendent, which caused written notice to be served on the plaintiff on January 24, 1964 and alleged that thereafter the board "rescinded the action previously taken by its chief executive officer" and granted plaintiff's request that she be afforded a hearing. It was only after the hearing, it is alleged, that the district, acting through the school board, determined to discharge the plaintiff and that "good cause" having been shown, the dismissal was a lawful one.

Plaintiff's basic position is that she was discharged "once and for all" on January 24, 1964. Under her theory of the case her dismissal on that date constituted a breach of contract, inasmuch as under C.R.S. 1963, 123-17-1 she could not be dismissed "except for good cause shown," which required, among other things, a hearing *before* dismissal. Her argument is that since she was given no hearing *prior* to January 24, 1964, the action of the superintendent relieving her on that day of her teaching duties was a breach of the contract between the parties. As concerns the hearing thereafter held by the school board on February 26, 1964, plaintiff asserts that this was a nullity and of no effect for the reason that the school board had no "inherent authority to reconsider, modify, or rectify its illegal action." In support of her position plaintiff relies primarily upon *High School District v. Graves*, 87 Colo. 52, 284 P. 1026.

The district's position is that its school board has "inherent authority to rectify or reconsider any decision which was originally acted upon by it as a result of a mistake or erroneous conclusion of law." This being the case, the district points out that the board in effect did "rescind" the January 24th letter issued by its superintendent by thereafter affording plaintiff the hearing guaranteed by applicable statute. Hence, argues the

district, plaintiff was lawfully discharged by the district on February 29, 1964 and there was no breach of contract on its part. As already indicated, the trial court sustained the district's position and held the discharge to be a lawful one.

■ This matter was resolved by the trial court prior to *Big Sandy School District v. Carroll*, 164 Colo. 173, 433 P.2d 325. In that case we held that under C.R.S. 1963, 123-10-19 the power to employ or discharge teachers is exclusively vested in the school board and could not be delegated to any other body or official, such as a school superintendent, for example. If this case turned on a factual determination as to whether the school superintendent in his letter of January 24, 1964 was acting on his own and without benefit of prior board action, or was acting at the direction of the board *after* formal board action, the case would have to be reversed and remanded, inasmuch as the record before us is unclear on this particular point.

As mentioned above, in her complaint plaintiff alleged that the *district* unlawfully terminated the contract on January 24, 1964 when it caused the superintendent to deliver the aforementioned letter. However, this allegation was denied by the district in its answer, and it was indicated therein that the superintendent served this notice on plaintiff without the prior approval thereof by the board. Furthermore, the affidavits filed by the parties to the action did not resolve this particular matter.

In our view, though, disposition of the present controversy does not turn on this particular issue. Therefore, in this regard we shall assume to be a fact the position most favorable to the plaintiff, namely, that the superintendent in his letter of January 24, 1964 was acting pursuant to formal board action. If the other alternative be the truth of the matter, namely, that the superintendent in his letter of January 24, 1964 was *not* acting pursuant to formal board action, then

under *Big Sandy* his action was a nullity and there would be no dispute but that the ensuing action of the board resulted in a dismissal which was in all respects a lawful one, and not a breach of contract.

█ Before proceeding to the central issue in the case, it might serve to place the entire matter in better focus to note that plaintiff does not contend that there was insufficient evidence to support the detailed findings of the board made on February 29, 1964, nor is there any suggestion that good cause for her dismissal was not established at the hearing. Rather, plaintiff's *sole* position is that the contract was breached on January 24, 1964, that the rights of the parties were fixed in concrete as of that date, and that the subsequent hearing before the board did not in any manner cure or remedy the situation. We disagree and hold that under the circumstances of the present case plaintiff's dismissal was a lawful one.

█ In 78 C.J.S. 1098 the general rule on the particular matter with which we are here concerned is said to be as follows:

"A school board may reconsider its action in dismissing a teacher; and, if the original proceedings were void for failure to give the teacher the requisite notice and hearing, the board may treat them as a nullity, and discharge the teacher after notice and hearing properly held."

In support of the foregoing proposition see *Alexander v. Manton Joint Union School District*, 73 Cal. App. 252, 238 P. 742, where it was held that school trustees could treat as a nullity their attempted dismissal of a teacher where no charges had been preferred, no notice given, and no hearing held, and that the trustees could thereafter hold a hearing upon notice and lawfully discharge the teacher, if good cause for such discharge was then shown. See also *White v. Wohlenberg*, 113 Iowa 236, 84 N.W. 1026.

Plaintiff argues that regardless of what the rule may

be elsewhere, the present controversy is controlled by *High School District v. Graves, supra.* In our view the instant case is distinguishable from *Graves.* In the first place our holding in *Graves* was that the charges against the employee there under attack were untrue, hence good cause not being shown, the dismissal was unlawful and constituted a breach of contract between the parties. It is quite true that in *Graves* we then nevertheless went on to state that the hearing belatedly held by the board in an effort to validate its prior discharge of the superintendent, where no charges had been filed and no hearing held, was only "surface compliance with the law . . . . without any apparent abatement of its [the board's] fixed determination to oust its chosen school officer, whatever the underlying reasons may have been." In other words, the hearing afforded in *Graves* was deemed to be a sham. In the instant case, however, there is no suggestion that the hearing which plaintiff requested, and then decided to boycott, was anything other than a full and complete hearing before an impartial school board which had not prejudged or predetermined the matter.

Furthermore, the *Graves* case must be read in the light of *Ruger v. Knight,* 104 Colo. 33, 88 P.2d 118. In *Ruger* the teacher in question was informed by the assistant school superintendent that the board had already decided upon her discharge and that she would be so notified within a few days. Prior to the notification by the assistant superintendent the teacher had been afforded no hearing of any kind. In compliance with *Roe v. Hanington,* 97 Colo. 113, 47 P.2d 403, which was decided only days after the assistant superintendent had thus advised the teacher, the school board thereafter held a hearing, upon notice, determined that there was good cause for the discharge of the teacher and dismissed her.

On our review of *Ruger* we upheld the dismissal and determined that the controversy was not governed by

*Graves.* In *Ruger* it was pointed out that the hearing afforded in *Graves* was only a "pretended hearing," and also that in *Graves* it was determined that the charges against the teacher were untrue.

So, in *Ruger,* as in the instant case, there was no suggestion that the hearing actually afforded the teacher was only a "pretended hearing." Futhermore, in *Ruger,* as in the instant case, no challenge was made to the ultimate finding of the board that good cause for dismissal did in fact exist. Without further belaboring the point, we conclude that the present controversy is controlled by *Ruger v. Knight, supra,* and not by *Graves.*

The judgment is affirmed.

MR. JUSTICE PRINGLE and MR. JUSTICE KELLEY concur.